HYMAN STATLIN, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Statlin v. Commissioner
Docket No. 28089-86.
United States Tax Court
T.C. Memo 1989-223; 1989 Tax Ct. Memo LEXIS 223; 57 T.C.M. (CCH) 353; T.C.M. (RIA) 89223; May 10, 1989. Hyman Statlin, pro se. David W. Sorensen, for the respondent. GERBER
MEMORANDUM FINDINGS OF FACT AND OPINION GERBER, Judge: Respondent, in an April 8, 1986, statutory notice of deficiency, determined that petitioner was liable for deficiencies and additions to income tax as follows: Addition to Tax
Year
Income Tax
Section 6653(b) [1]
1978
$ 23,237.53
$ 11,618.77
1979
50,832.81
25,416.41
1980
43,509.61
21,754.81
1981
22,761.23
11,380.62
1982
1,094.17
547.09
The issues *224 presented for our consideration are: (1) Whether petitioner had unreported income for any of the taxable years 1978 through 1982; (2) whether petitioner is entitled to deductions in addition to those allowed by respondent; and (3) whether petitioner is liable for additions to tax under section 6653(b) for 1978 through 1981 and sections 6653(b)(1) and (2) for 1982. FINDINGS OF FACT Hyman Statlin, petitioner, resided in Cerritos, California, at the time of the filing of his petition herein. Petitioner has been engaged in positions involving the lumber industry for about 40 years. Most of his experience is in the manufacture of furniture, but he also participated in the construction of a wooden airplane named "Hercules" and also known as the "Spruce Goose." During petitioner's 1978 through 1982 taxable years he was the mill superintendent of Pacific Furniture Company (Pacific). At the time of the trial petitioner continued in the employ of Pacific. He was responsible for the manufacture of furniture and he personally made tooling, jigs and dies for use in furniture manufacture. During the years in issue, petitioner was also responsible for the purchase of lumber on behalf of Pacific. *225 Beginning in 1978 and continuing into 1982, Pacific purchased lumber from Toal Lumber Company (Toal). Woodruff Toal was the owner of Toal during 1978 through 1982. Although Toal was a lumber wholesaler and normally sold to other lumber yards and not end users, during 1978 Mr. Toal decided to sell to Pacific. Mr. Toal was approached by petitioner and they reached an arrangement or agreement whereby petitioner was to receive "under the table" or as a "kickback" a monetary payment equal to 5 percent of the total of Pacific's purchases from Toal. Eventually, the percentage was increased to 7 and then to 7.5 percent of Pacific's purchases from Toal. At the time of the increase from 5 to 7 percent, petitioner told Mr. Toal that Joe Brownstone, one of Pacific's two owners, was to receive 5 percent and that 2 percent was for petitioner. Petitioner cautioned Mr. Toal not to discuss the arrangement with Joe Brownstone. Joe Brownstone, during the period 1978 until sometime in 1982, was not aware of the kickbacks being paid to petitioner. Further, Joe Brownstone did not receive any portion of the amounts paid by Toal to petitioner. Toal made up or funded the amounts paid to petitioner *226 by increases to the price charged Pacific. Occasionally petitioner would direct Toal to deliver a lumber purchase in the name of and paid for by Pacific to locations other than Pacific's place of business. Although the lumber in question belonged to Pacific, petitioner sold it to a third party and petitioner retained the proceeds of sale. Pacific's owners discovered, during 1982, petitioner's receipt of kickbacks and diversion of Pacific lumber to others. After the discovery petitioner lost his authority to purchase lumber. Thereafter, respondent's agent began an audit examination of petitioner because petitioner's income tax return did not include about $ 35,000 reflected by Toal on a Form 1099 which was issued in petitioner's name and submitted to respondent. When called in for examination, petitioner, at different times, provided the following explanations for the failure to include amounts reported by Toal on Forms 1099: (1) Petitioner claimed to be a Government informer and he theorized that the money was not taxable because it was paid by the Government. (2) He also claimed that he had "donated" his own lumber to Pacific (apparently in offsetting amounts) and, accordingly, *227 the amounts reported by Toal on the Forms 1099 were not taxable because they were "contributions." (3) On one occasion petitioner claimed that the amounts reflected by Toal on the Forms 1099 were offset by (ostensibly deductible) expenditures made to individuals for their labor in sorting Pacific's lumber. (4) Finally, he claimed to have a large cache of lumber which was being sold to Pacific along with the lumber being delivered by Toal. This particular claim was somewhat more convoluted in that petitioner claimed that the trucks delivering Toal's lumber to Pacific were diverted to a special location of petitioner and small amounts of petitioner's lumber were added to the truckload before being delivered to Pacific. With respect to the claim that petitioner provided sorting services for Pacific, no records reflecting petitioner's alleged expenditures were presented or available at the time petitioner first made this claim. Subsequently, petitioner produced records which he purported would substantiate his claim. The records were fabrications and no direct or circumstantial evidence was adduced to corroborate their existence. Petitioner's claims were not supported and usually *228 directly refuted by the testimony of Mr. Toal, Mr. Brownstone and other officials of Pacific. Petitioner received kickbacks from Toal in the amounts of $ 35,626.33, $ 58,383.22, $ 44,537.60, $ 46,299.00 and $ 1,588.00 for the years 1978, 1979, 1980, 1981 and 1982, respectively. Petitioner failed to report these amounts on his income tax returns for these respective years. Petitioner sold lumber, which belonged to Pacific, to a third party and received $ 23,420.03, $ 39,298.70 and $ 32,003.02 from those sales in 1978, 1979 and 1980, respectively. Petitioner did not report these sales proceeds on his 1978, 1979 and 1980 returns. Petitioner also failed to report interest income and reimbursements received from Pacific during each of the taxable years 1978 through 1982. The underpayments of tax required to be shown on petitioner's 1978, 1979, 1980, 1981 and 1982 returns are intentional and due to petitioner's fraudulent attempt to evade payment of tax. OPINION Petitioner bears the burden of proof concerning respondent's determination of unreported income from specific items as set forth in the notice of deficiency. Rule 142(a). Petitioner stipulated that he received all of *229 the amounts determined as income, but has advanced varying, contradictory and somewhat bizarre explanations why the amounts do not result in tax liability to him. Petitioner did not carry his burden of showing that respondent's determination was in error with respect to any of the items determined. Respondent bears the burden of proving by clear and convincing evidence that some part of an underpayment of tax for the taxable years 1978, 1979, 1980, 1981 and 1982 was due to fraudulent acts of petitioner in order to sustain the 50-percent addition to tax under section 6653(b). Sec. 7454(a); Rule 142(b). Respondent's burden with respect to fraud is met if it is shown that the taxpayer intended to evade tax known to be owing by conduct intended to conceal, mislead or otherwise prevent the collection of such taxes. , cert. denied ; , affg. a Memorandum Opinion of this Court; . The presence of fraud is a question of fact to be determined from *230 the entire record. , affd. without published opinion . Fraud is never presumed but must be established by affirmative evidence. . It may, however, be proved by circumstantial evidence because direct proof of a taxpayer's intent is rarely available and his entire course of conduct may be examined to determine whether the fraudulent intent is present. ; . Respondent contends that in this case he has carried his burden of proving fraud on the part of petitioner by clear and convincing evidence of the following: (1) Petitioner omitted taxable income from different sources for 5 consecutive years; (2) petitioner attempted to conceal the unreported income; and (3) petitioner provided false explanations to respondent's examiners during the audit. We find that the substantial omissions, see , affd. without published opinion *231 , and the attempts to conceal and false explanations, , affg. a Memorandum Opinion of this Court, cert. denied , establish clearly and convincingly that petitioner fraudulently underpaid his 1978, 1979, 1980, 1981 and 1982 Federal income tax within the meaning of section 6653(b). To reflect the foregoing, Decision will be entered for the respondent.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended and in effect for the years in issue. All rule references are to this Court's Rules of Practice and Procedure. For the taxable year 1982 only, respondent determined that secs. 6653(b)(1) and 6653(b)(2) apply.↩